### United States District Court for the District of New Hampshire

_____
                                                        )
ADIRA SOBER LIVING, LLC, JOANNA APOSTOLES,)
CYNTHIA ROSS, JENNIFER VALLIER,          )
DEBORAH ROBERTS, KRYSTAL FELLOWS,        )
EMILY POWERS, ALLISON GRANDE, and        )
MACKENZIE SEELY                          )
            Plaintiffs,                   )
                                         )
       v.                                )            Civil Action No.
                                         )
CITY OF MANCHESTER                       )
            Defendant.                    )
_____)

### COMPLAINT AND JURY DEMAND

This Complaint is an action for a violation of and injunctive relief under the federal Fair Housing Act as Amended ("FHAA"), the Americans with Disabilities Act ("ADA") and for infliction of emotional distress.  This action concerns a residential property located in Manchester, New Hampshire that is leased by Adira Sober Living, LLC and occupied formerly and/or currently by the individual Plaintiffs identified in paragraphs 2 through 9 below, collectively referred to herein as the "Resident Plaintiffs."

### PARTIES

1.  The Plaintiff, Adira Sober Living, LLC, is a limited liability company with a business address of 40 Abbey Lane #201, Goffstown, NH, 03045 (the "Adira").

2.  The Plaintiff, MacKenzie Seely, has a business address of 40 Abbey Lane #201, Goffstown, NH, 03045, USA

3.  The Plaintiff, Joanna Apostoles, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

4.  The Plaintiff, Cynthia Ross, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

5.  The Plaintiff, Jennifer Vallier, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

6.  The Plaintiff, Deborah Roberts, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

7.  The Plaintiff, Krystal Fellows, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

8.  The Plaintiff, Emily Powers, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

9.  The Plaintiff, Allison Grande, at material times had a residential address of 155 Grand Avenue, Manchester, New Hampshire.

10.  The Defendant, City of Manchester, is a municipality with the mayor's office located at One City Hall Plaza, Manchester, NH 03101 (the "City" or "Defendant").

### JURISDICTION

11.  This Court has personal and subject matter jurisdiction as both the Plaintiff and Defendant are domestic entities, residents and/or located in New Hampshire and this matter concerns claims under the federal Fair Housing Act as Amended and Americans with Disabilities Act.

### FACTS

12.  Adira is the business of managing and/or providing sober housing for disabled individuals who reside at 155 Grand Avenue, Manchester, New Hampshire (the "Property").

13.  Adira leases the Property from Quasar, LLC.

15.  Adira provides housing at the Property to individuals in recovery from substance use who qualify as disabled under the FHAA and/or ADA.

16.  At all material times to this complaint, the Property has been occupied by up to six (6) unrelated disabled females who reside together like a family.

17.  The City has resisted, through its own policy decisions, actions, and at the demand of neighbors and others, the use and occupancy of residential properties within the City as sober housing, for disabled individuals in recovery from substance use.

18.  On August 5, 2021, Mackenzie Seely requested a reasonable accommodation for the Property to allow 6 unrelated women in recovery to live together (the "Reasonable Accommodation").  See Exhibit A hereto.

19.  As of August 5, 2021, the City's zoning ordinance had *no limitation* on the number of individuals that may live together if unrelated, as long as they lived together in a structured relationship constituting an organized housekeeping unit.

20.  On or about September 7, 2021, in response to Adira's request to be considered a "family," and that of 296 Orange Street, LLC's request to be considered a "family" under the City's zoning ordinance then existing, the City changed the definition of a "family" under its zoning ordinance to discriminate against sober housing.  The City's current definition of "family" allows 4 unrelated individuals to live together as a single housekeeping unit.  The City's current definition also allows "families" to have an unlimited number of unrelated "domestic servants" as residents of a household.  The City's current definition of a family is exclusionary and discriminatory, allowing those that employ domestic servants to live with them, without limitation, but placing limits on the number of unrelated individuals (disabled or otherwise) that may live together.  The City's current definition of "family" should be invalidated, as it is discriminatory and/or was enacted to achieve a discriminatory goal.  <u>See</u> Exhibit B (9/7/21 Zoning Ordinance Excerpts) and Exhibit C hereto (Orange Street 296, LLC's request for reasonable accommodation and variance application, in part).

21.  Ms. Seely presented to the City prior to and at the ZBA hearing on March 10, 2022 that the residents live in "a structured relationship constituting an organized housekeeping unit."  <u>See</u> Exhibit D hereto (Variance Application submitted with respect to the Property).

22.  The City, through its ZBA, denied all the relief to the Plaintiffs/Applicants.  <u>See</u> Exhibit E hereto ("ZBA Decision").

23.  The City's conduct and actions towards the Plaintiffs is discriminatory.  Further, the reasonable accommodation sought, was reasonable and necessary.

24.  Cities and municipalities have an affirmative duty to provide individuals with disabilities reasonable accommodations to "rules, policies, practices, or services, when such accommodation may be necessary to afford such persons equal opportunity to use and enjoy a dwelling. . ."  But for the requested accommodation, the Plaintiffs cannot legally use 155 Grand Avenue to provide housing to the disabled occupants.

25.  Failure to make reasonable accommodation is a violation of the Fair Housing Act.

26.  The accommodation is necessary for equal access to housing.  Granting the accommodation would not impose an undue financial or administrative burden upon the City.

27.   The reasonable accommodation sought does not change the essential zoning scheme of a municipality.

28.   The City utilizes a process for considering reasonable accommodations that is cost prohibitive and onerous for individuals in-need of relief and accommodation for difficult and often desperate situations, in this instance housing for disabled individuals in recovery from substance use.

29.   Adira has incurred thousands of dollars in fees and costs to merely obtain consideration of its Reasonable Accommodation, which was ultimately wholly denied by the City.

30.   Adira has diverted funds from the provision of housing to the disabled to seek the Reasonable Accommodation from the City, including the filing of this lawsuit.

31.   The refusal to grant the Reasonable Accommodation is without legal or factual support and results from unfounded fear and prejudice created by those employed by the City and residents of the City who stand against housing for individuals in recovery from substance use (i.e. sober housing), who simply do not want this type of housing in their neighborhoods.

32.   Residents of the City did testify at the ZBA hearing against the Plaintiff's request for a Reasonable Accommodation to use the Property for sober housing, arguing that sober housing belonged elsewhere in the City.

33.   Members of the ZBA did succumb to the pressure maintained by those against sober housing and did carryout the discriminatory intention of those against unrelated disabled individuals living at the Property by refusing to grant the Reasonable Accommodation.

34.   Plaintiffs seek judicial relief for actual injury as a result of the Defendant's discriminatory actions, failure to comply with applicable law and failing to provide a reasonable accommodation, as a result of Plaintiffs' disability and/or association with the disabled and the provision of housing to the disabled.

35.   The Defendant's intentional, wrongful actions, are directed towards the Plaintiffs because of the fact that the residents are disabled individuals in recovery from alcohol and/or drug abuse.

## COUNT I
### (Failure to Grant a Reasonable Accommodation/Discrimination – Fair Housing Act)

36.   Plaintiff incorporate and restates herein paragraphs 1-35 supra.

37.  The FHAA forbids discrimination towards individuals because of their disability or discrimination against a person associated with them.

38.  Federal law declares that discrimination is prohibited in failing to provide a reasonable accommodation or in effectuating discriminatory goals of others, or those of a municipality, through the use of or imposition of rules, laws or zoning, whether legal or otherwise, if done with discriminatory animus or without animus if done in a way that effectuates the discriminatory goals of others.

39.  Adira is associated with and/or provides housing to disabled/handicapped individuals.

40.  The Resident Plaintiffs are a protected class.

41.  On March 9, 2021, with respect to sober houses located at Orange and Dubuque Street, in response to an email from Mark Hayward, an agent of the City stated, "Enforcement has been driven by complaints from neighbors."

42.  During May 2021, a sober house was allowed to exist at Dubuque Street in the City under the definition of "congregate housing," however, argument was presented against said housing at public hearing, that it did not meet the zoning or parking requirements.

43.  On June 22, 2021, in response to a fear that Sober Houses may exist under the definition of a "family" and/or as "congregate housing," the City drafted proposed changes to the definition of "family" and to increase the parking requirements for "congregate housing" to prevent sober houses from existing under said definitions.  See Exhibit F hereto ( June 22, 2021 letter with proposed new ordinance).

44.  On July 13, 2021, Mark Millet emailed the City's Mayor arguing action needed to be taken against the "illegal congregate living business" at 155 Grand Avenue, that the City was corrupt for not taking more aggressive action, that "there is a payoff involved" to cause City agents to look the other way, and that "[he] had hoped after our meeting on June 16 when you assured the many residents in attendance that the Office of the Mayor would support the efforts to crack down on these illegal businesses that the planning board would have received the message 'loud and clear'. . . it sounded like a directive from you to Mr. Landry and Mr. Lafrennier standing right next to you . . ."

45.  Following Mr. Millet's email, the Mayor submitted a written statement to the ZBA to deny the relief requested by Adira and the Resident Plaintiffs, in the form of being treated like a family or a Reasonable Accommodation.

46.  On July 20, 2021, Christopher Vought emailed the Mayor and Alderman advocating for a change of the definition of "family" in the City's zoning to prevent the use of Property by unrelated disabled individuals as sober housing.

47.  Following Mr. Vought's email, the City did change the definition of "family" to cap the number of *certain* unrelated disabled people that may live together to prevent or limit sober homes, including Adira, from using residential properties to provide housing to unrelated disabled individuals.

48.  Through at least October 14, 2021, the City had a uniform policy of not issuing Certificates of Compliance for sober houses, instead treating the housing as "illegal."

49.  Defendant, through its actions and inaction, *supra*, and intentional conduct and/or willful ignorance of applicable laws that require that disabled/handicapped individuals be treated fairly and provided equal access to housing have violated Federal law by refusing to provide a reasonable accommodation that was reasonable and necessary, and/or in discriminating against the Plaintiff.

50. Defendant has violated the Plaintiffs' rights under the FHAA by:

a.  denying a Reasonable Accommodation and otherwise making housing unavailable to the disabled;

b.  enforcing discriminatory rules and internal policies, changing and modifying laws to effectuate discriminatory goals, and using an onerous framework for relief under the FHAA, on the Plaintiffs;

c.  interfering with the rights of the Resident Plaintiffs to live in the dwelling of their choice by refusing the requested Reasonable Accommodation and intentionally discriminating against them;

d.  failing to make reasonable accommodations in its enforcement of its rules, regulations and laws so as to afford an equal opportunity to the disabled to use and enjoy the aforementioned dwelling; and

e.  selective enforcement and/or targeting of Adira because of its association with the disabled and the exercise of their fair housing rights.

51.  The Defendant's conduct in trying to exclude disabled individuals from residential neighborhoods is discriminatory towards and has damaged the Plaintiffs by causing them to: incur legal fees; injuring the occupants; interfering with the quiet enjoyment and occupancy of the Property; resulting in the "illegal use" of the Property for sober housing; and causing business losses, damages and emotional pain and suffering to the Resident Plaintiffs.

52.  In forcing Plaintiffs through an onerous ZBA process and denying any and all relief sought by the Plaintiffs, the City is using the code/zoning for a discriminatory goal and have knowingly and/or intentionally ignored the rights of

the Plaintiffs under applicable law to effectuate discriminatory goals of the City and/or certain residents of and/or agents of the City, to the detriment and harm of the Adira and the Resident Plaintiffs.

WHEREFORE, Plaintiffs prays for a temporary and/or preliminary injunction against the Defendant to prevent the enforcement of the definition of "family" and from imposing requirements and/or refusing to allow housing for the disabled and by those providing housing to the disabled, including Adira, because of its association with the disabled. Further, Plaintiffs seek damages to be proven at trial against the Defendant for failing to grant a reasonable accommodation and intentional discrimination, including direct and indirect damages, consequential damages, punitive damages, emotional pain and suffering by the Resident Plaintiffs, and attorney fees, costs and interest.

## COUNT II
### (Discrimination – Americans with Disabilities Act)

53.  Plaintiffs incorporate and restates herein paragraphs 1-52 supra.

54.  Adira is associated with, and/or provide housing to people with disabilities as defined in 42 U.S.C. 12102(2).

55.  The City is a public entity pursuant to 42 U.S.C. 12131(1).

56.  The actions of the City to treat the use of the Property as something other than a single-family home violates the rights of the Plaintiffs under the Americans with Disabilities Act and the regulations promulgated thereunder by:

a.  denying the individual occupants who are in recovery from alcoholism and/or substance abuse the opportunity to participate in or benefit from the supportive housing program offered by the Plaintiff Adira;

b.  using City internal policies and methods of administering the code through laws and regulations enacted in the State of New Hampshire with the purpose of subjecting the Plaintiff and Resident Plaintiffs to discrimination based upon their provision of housing to the handicapped and/or their handicap;

c.  subjecting Adira because of their association with the disabled to discriminatory practices and enforcement of the law;

d.  utilizing licensing and code requirements and changing laws in a manner to deny equal rights to disabled persons; and

e.  utilizing licensing, code requirements and laws, that are not imposed upon other groups of related non-disabled persons, to deny Plaintiff and/or Plaintiff Residents of the Property the enjoyment of their rights.

57.  The City's conduct in seeking to exclude disabled individuals from a residential neighborhood by deeming said occupancy something other than a single family home and in refusing to recognize the occupancy as a "family" and then changing the definition of "family" to effectuate the exclusion from the neighborhood under the auspices of zoning, and in failing to grant a reasonable accommodation, is discriminatory towards and has damaged the Plaintiffs.

WHEREFORE, Plaintiffs prays for a temporary and/or preliminary injunction against the Defendant to prevent the enforcement of the definition of "family" and from imposing requirements and/or refusing to allow housing for the disabled and by those providing housing to the disabled, including Adira, because of its association with the disabled.  Further, Plaintiffs seek damages to be proven at trial against the Defendant for failing to grant a reasonable accommodation and intentional discrimination, including direct and indirect damages, consequential damages, punitive damages, emotional pain and suffering by the Resident Plaintiffs, and attorney fees, costs and interest.

## COUNT III
### (Intentional Infliction of Emotional Distress)

58.  Plaintiffs incorporate and restates herein paragraphs 1-57 supra.

59.  The City has knowing, wrongfully and intentionally discriminated against the Resident Plaintiffs.

60.  The Resident Plaintiffs have been harmed by the extreme and outrageous conduct set forth *supra*, which intentionally and/or recklessly caused severe emotional distress to the Resident Plaintiffs, not knowing the stability of and being fearful of losing their housing, causing serious mental and emotional harm accompanied by objective physical symptoms, including relapse, loss of sleep, sickness, anxiety and/or severe stress, said symptoms being experienced by one or more of them, with each of them experiencing emotional and mental harm.

WHEREFORE, the Plaintiff Residents pray for an award of monetary damages against the City in an amount of be proven at trial, plus costs and interest.

**Plaintiff requests a trial by jury on all counts so triable.**

Dated this 23rd day of June 2022.

For the Plaintiffs,
By their Attorney,

*/s/Andrew J. Tine*
Andrew J. Tine (NHBAR 19396)
Law Offices of Andrew J. Tine
18 Maple Avenue, #267
Barrington, RI 02806
atine@tinelaw.com
401-396-9002 – Tel.

# EXHIBIT A

LAW OFFICES OF

# ANDREW J. TINE

ATTORNEY AT LAW

Via Email (jnazaka@manchesternh.gov and llafreni@manchesternh.gov)
US Mail

August 5, 2021

Mayor Joyce Craig
City of Manchester
One City Hall Plaza
Manchester, NH 03101

Mr. Leon L. LaFreniere
Mr. Michael Landry
Planning and
Community Development
One City Hall Plaza
Manchester, NH 03101

> Re:    **155 Grand Avenue, Manchester, NH**
> **REQUEST FOR REASONABLE ACCOMMODATION UNDER THE**
> **FAIR HOUSING ACT**

Dear Mayor Craig, Mr. Freniere and Mr. Landry:

This office represents Mackenzie Seely ("Seely"), the lessee of 155 Grand Avenue, Manchester, NH (the "Property"). This letter is a request for a reasonable accommodation under the federal Fair Housing Act, as Amended ("FHA").

The Property is being used as a sober recovery home for unrelated disabled individuals living in a structured relationship and organized housekeeping unit. This Property is occupied by six unrelated women in recovery from substance use. They are considered disabled.

The City's Zoning Ordinance defines a "Family" as: "A group of individuals, whether or not related, living together in a dwelling unit in a structured relationship constituting an organized housekeeping unit." The City's definition of a family allows unrelated individuals to live together in unlimited numbers (obviously as limited by other code requirements). However, the City has a limit on the number of disabled individuals that may live together. Per HUD and the DOJ, this policy and application of the Zoning Ordinance violates Federal Law, as a matter of law.

HUD and the DOJ have issued a policy statement, stating: "Local zoning and land use laws that treat groups of unrelated persons with disabilities less favorably than similar groups of unrelated persons without disabilities violate the Fair Housing Act. For example, suppose a city's zoning ordinance defines a "family" to include up to a certain number of unrelated persons living together as a household unit, and gives such a group of unrelated persons the right to live in any

1

zoning district without special permission from the city.  If that ordinance also prohibits a group home having the same number of persons with disabilities in a certain district or requires it to seek a use permit, the ordinance would violate the Fair Housing Act. The ordinance violates the Act because it treats persons with disabilities less favorably than families and unrelated persons without disabilities."  See Exhibit A *JOINT STATEMENT OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND THE DEPARTMENT OF JUSTICE* dated November 10, 2016 (excerpt).

As such, Seely seeks a reasonable accommodation to use the Property to the same extent and under the same laws as any single "family," as family is defined under the City's Zoning Ordinance.

Separately, we request that the City not take any further action against the Property until the requested reasonable accommodation is allowed or denied, so that Seely may pursue additional legal remedies if necessary. We further request that the City allow through 9/15/21 for Seely to seek a variance or other administrative relief, should the City deny her requested accommodation and she opt to pursue those administrative options.  Please confirm this is agreeable.

We look forward to hearing from you.

Sincerely,

Andrew J. Tine

2



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY



**U.S. DEPARTMENT OF JUSTICE**
CIVIL RIGHTS DIVISION

*Washington, D.C.*
*November 10, 2016*

## JOINT STATEMENT OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND THE DEPARTMENT OF JUSTICE

## STATE AND LOCAL LAND USE LAWS AND PRACTICES AND THE APPLICATION OF THE FAIR HOUSING ACT

## INTRODUCTION

The Department of Justice ("DOJ") and the Department of Housing and Urban Development ("HUD") are jointly responsible for enforcing the Federal Fair Housing Act ("the Act"),[1] which prohibits discrimination in housing on the basis of race, color, religion, sex, disability, familial status (children under 18 living with a parent or guardian), or national origin.[2] The Act prohibits housing-related policies and practices that exclude or otherwise discriminate against individuals because of protected characteristics.

The regulation of land use and zoning is traditionally reserved to state and local governments, except to the extent that it conflicts with requirements imposed by the Fair Housing Act or other federal laws. This Joint Statement provides an overview of the Fair Housing Act's requirements relating to state and local land use practices and zoning laws, including conduct related to group homes. It updates and expands upon DOJ's and HUD's Joint

---

[1] The Fair Housing Act is codified at 42 U.S.C. §§ 3601–19.

[2] The Act uses the term "handicap" instead of "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that the definition of "disability" in the Americans with Disabilities Act

1

**12. Can a state or local government enact laws that specifically limit group homes for individuals with specific types of disabilities?**

No.  Just as it would be illegal to enact a law for the purpose of excluding or limiting group homes for individuals with disabilities, it is illegal under the Act for local land use and zoning laws to exclude or limit group homes for individuals with specific types of disabilities.  For example, a government may not limit group homes for persons with mental illness to certain neighborhoods.  The fact that the state or local government complies with the Act with regard to group homes for persons with some types of disabilities will not justify discrimination against individuals with another type of disability, such as mental illness.

**13. Can a state or local government limit the number of individuals who reside in a group home in a residential neighborhood?**

Neutral laws that govern groups of unrelated persons who live together do not violate the Act so long as (1) those laws do not intentionally discriminate against persons on the basis of disability (or other protected class), (2) those laws do not have an unjustified discriminatory effect on the basis of disability (or other protected class), and (3) state and local governments make reasonable accommodations when such accommodations may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling.

Local zoning and land use laws that treat groups of unrelated persons with disabilities less favorably than similar groups of unrelated persons without disabilities violate the Fair Housing Act.  For example, suppose a city's zoning ordinance defines a "family" to include up to a certain number of unrelated persons living together as a household unit, and gives such a group of unrelated persons the right to live in any zoning district without special permission from the city.  If that ordinance also prohibits a group home having the same number of persons with disabilities in a certain district or requires it to seek a use permit, the ordinance would violate the Fair Housing Act.  The ordinance violates the Act because it treats persons with disabilities less favorably than families and unrelated persons without disabilities.

A local government may generally restrict the ability of groups of unrelated persons to live together without violating the Act as long as the restrictions are imposed on all such groups, including a group defined as a family.  Thus, if the definition of a family includes up to a certain number of unrelated individuals, an ordinance would not, on its face, violate the Act if a group home for persons with disabilities with more than the permitted number for a family were not allowed to locate in a single-family-zoned neighborhood because any group of unrelated people without disabilities of that number would also be disallowed.  A facially neutral ordinance, however, still may violate the Act if it is intentionally discriminatory (that is, enacted with discriminatory intent or applied in a discriminatory manner), or if it has an unjustified

# EXHIBIT B

# Zoning Ordinance

## City of Manchester, NH

In Board of Mayor and Aldermen
Passed to be enrolled February 7, 2001
Passed to be ordained February 7, 2001

**Amended through September 7, 2021**



## CITY OF MANCHESTER
**PLANNING AND COMMUNITY DEVELOPMENT DEPARTMENT**
One City Hall Plaza
Manchester, New Hampshire  03101
Phone (603) 624-6450
Fax (603) 624-6529
www.ManchesterNH.gov
E-mail: PCD@ManchesterNH.gov

**AMENDMENTS SUBSEQUENT TO THE ZONING ORDINANCE ADOPTION DATE OF FEBRUARY 7, 2001**
*(CONTINUED):*

*August 15, 2017* – Article 13 Impact Fees.
Revising and reorganizing Article 13, updating the impact fee schedules for both school and fire, and revising related definitions in Article 3.

*October 1, 2019* – Article 14, Section 14.02(B) Authorization of Variances:
1 – Replace "requirements" with "criteria"
1.a – Replace with "The variance will not be contrary to the public interest;"
1.b – Replace with "The spirit of the ordinance is observed;"
1.c – Replace with "Substantial justice is done;"
1.d – Replace with "The values of surrounding properties are not diminished;"
1.e – Replace with "Literal enforcement of the provisions of the ordinance would result in an unnecessary hardship."

*October 1, 2019* – Article 14, Section 14.02(B)4 - Replace with "Variances authorized under Section 14.02(B) shall be valid if exercised within 2 years from the date of final approval, or as further extended by local ordinance or by the zoning board of adjustment for good cause, provided that no such variance shall expire within 6 months after the resolution of a planning application filed in reliance upon the variance."

October 1, 2019 – Article 14, Section 14.02(C)5 – Replace with "Special exceptions authorized under Section 14.02(C) shall be valid if exercised within 2 years from the date of final approval, or as further extended by local ordinance or by the zoning board of adjustment for good cause, provided that no such special exception shall expire within 6 months after the resolution of a planning application filed in reliance upon the special exception."

*October 1, 2019* – Article 14, Section 14.03 (C) Notification. Strike "certified mail". Replace with "verified mail, as defined by RSA 451-C:1, VII".

October 1, 2019 – Article 14, Section 14.03(H) Rehearing. Replace "twenty (20)" with "thirty (30).

*October 6, 2020* – Article 3. Amend definition of "Dwelling Unit, Accessory" to include the detached garage of a single-family dwelling.

*October 6, 2020* – Article 8.26. Amend Article 8.26 to allow for accessory dwelling units to be located in the detached garages of single-family dwellings and to more frequently use the abbreviation "ADU" in reference to accessory dwelling units.

*September 14, 2021* – Article 3, Section 3.03. Revise definition of "family".

*September 14, 2021* – Article 10, Section 10.04(A), Table of Off-Street Parking Requirements. Revise parking requirement for "Congregate Housing" from one parking space per congregate unit to one parking space per bedroom.

Article 3. Definitions

Dwelling:   A building or portion thereof used exclusively for residential occupancy, including single family, two family and multifamily dwellings, but not including hotels, lodging facilities, or rooming houses.

Dwelling Unit:  One or more rooms containing private bath, cooking and kitchen facilities, and sleeping quarters for the use of one or more individuals living as a single housekeeping unit.

Dwelling Unit, Accessory:  A residential living unit that is within or attached to a single-family dwelling, or that is within the detached garage of a single-family dwelling, and that provides independent living facilities for one or more persons, including provisions for sleeping, eating, cooking and sanitation on the same parcel of land as the principal dwelling unit it accompanies. *(05/02/17)*

Dwelling, Single Family:  A detached building used exclusively for occupancy by one (1) family, and which may contain an accessory dwelling unit that conforms to this Ordinance. *(Rev. 5/2/17)*

Dwelling, Two-Family: A detached building used exclusively for occupancy by two (2) families living independently of one another.

Dwelling, Multifamily:  A building or portion thereof containing three (3) or more dwelling units, whether in common ownership or owned as a condominium or cooperative.

Essential Public Services: The erection, construction, alteration, or maintenance by public utilities or governmental agencies of underground or overhead gas, electrical, steam, or water transmission or distribution systems, collection, communication, supply or disposal system, including poles, wires, mains, drains, sewers, pipes, conduits, cables, fire alarm boxes, police call boxes, traffic signals, hydrants and other similar equipment and accessories in connection therewith, but not including buildings necessary for the furnishing of adequate service by such public utilities or governmental agencies for the public health or safety or general welfare.

Extended Stay Facility:   A hotel-like establishment offering lodging accommodations to the general public, often available on a weekly or monthly basis, and providing in-room cooking facilities.

Family:   For the purpose of the City of Manchester Zoning Ordinance, the term "family" shall mean:

A.) One or more adult persons occupying a single unit, living and cooking together as a single housekeeping unit, exclusive of domestic servants, who are related by blood, adoption, marriage, or other domestic relationship recognized by the State of New Hampshire.

B.) A number of adult persons not exceeding four (4) living and cooking together as a single housekeeping unit though not related by blood, adoption, marriage or other domestic relationship recognized by the State of New Hampshire, shall constitute a family.

C.) Regardless of the definition set forth herein, foster children shall be allowed in accordance with NH State Regulations.

D.) Roomers, boarders, and other transient guests cannot be considered members of a family for this purpose of this definition. *(Rev. 09/07/21)*

Feepayer: A person applying for the issuance of a building permit which would create new development. *(For Impact Fee assessment purposes) (Rev. 8/15/17)*

Fence: A constructed barrier of any material or combination of materials erected for the purpose of enclosing or separating all or a portion of a lot. That portion of a wall which is above grade on only one side shall not constitute a fence. *(Also see Screening)*

Flag: Any fabric containing distinctive colors, patterns, or symbols, and used as a symbol of a government or political subdivision thereof.

Flood Insurance Rate Map (FIRM): An official map on which the Federal Emergency Management Agency (FEMA) has delineated both the special hazard areas and the risk premium zones applicable to the City of Manchester.

Floodplain or Flood-prone area: Any land area susceptible to being inundated by water from any source.

Flood-proofing: Any combination of structural and non-structural additions, changes, or adjustments to structures which reduce or eliminate flood damage to real estate or improved real property, water and sanitary facilities, structures and their contents.

Floor Area, Gross: The sum of the areas of the several floors of a building, including horizontal areas used for human occupancy in basements, attics, and penthouses, as measured from the exterior faces of the walls. It does not include unenclosed porches, or attics not used for human occupancy, or any such floor space intended and designed for accessory heating and ventilation equipment.

Floor Area Ratio (FAR): The ratio of gross floor area on a lot to the total lot area. The gross floor area calculation shall not include parking garages. *(Rev. 3/20/01)*

Frontage: The linear distance of any one property line of a lot, which abuts a legally accessible accepted public street, as classified by RSA 229:5. *(Also see Lot Line, Front)*

Grade: The lowest point of elevation of the existing surface of the ground within the area between a building and a line five (5) feet from the building.

Gross Leasable Area (GLA): The total floor area for which the tenant pays rent and that is designed for tenant occupancy, excluding public or common areas and malls, utility rooms, and stairwells.

# EXHIBIT C

LAW OFFICES OF

# ANDREW J. TINE

ATTORNEY AT LAW

Via US Mail – Certified/Return Receipt  7018 1130 0000 3118 9861

March 24, 2020

Leon L. LaFreniere
Director, Planning and
Community Development
One City Hall Plaza
Manchester, NH 03101

> **Re:**   **296 ORANGE STREET, MANCHESTER, NH**
> **REQUEST FOR REASONABLE ACCOMMODATION UNDER THE**
> **FAIR HOUSING ACT**

Dear Director LaFreniere:

This office represents Orange Street 296, LLC, the owner of 296 Orange Street, Manchester, NH (the "Property"). This letter is a request for a reasonable accommodation under the federal Fair Housing Act, as Amended ("FHA").

As the City is aware, the Property is being used as a sober recovery home for unrelated disabled individuals living in a structured relationship and organized housekeeping unit. The occupants are individuals in recovery from alcohol and/or drug use (not active users). The occupants are "disabled" under Federal Law and thus there is certain protection in place to afford them equal access to housing.

The legislative history of the FHA, in part, states:

> "[§ 3604(f)] would also apply to state or local land use and health and safety laws, regulations, practices and decisions which discriminate against individuals with handicaps. While state and local governments have authority to protect safety and health, and to regulate use of land, that authority has sometimes been used to restrict the ability of individuals with handicaps to live in communities. This has been accomplished by such means as the enactment or imposition of health, safety or land-use requirements on congregate living arrangements among non-related persons with disabilities. Since these requirements are not imposed on families and groups of similar size of other unrelated people, these requirements have the effect of discriminating against persons with disabilities.
> The Committee intends that the prohibitions against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice."
> H.R. Rep. No. 711, 100th Cong., 2d Sess. 24, reprinted in 1988 U.S.Code Cong.

& Admin. News at 2173, 2185.  Also see Community Services, Inc. v. Heidelberg Tp., 439 F.Supp.2d 380 (M.D.Pa. 2006) (footnote 5).

My client seeks a formal "reasonable accommodation" pursuant to the Fair Housing Act (42 U.S.C. Section 3604(f)(3)(B)) to avoid being subjected to any City ordinance, rule or law that would not be imposed upon a family if it occupied this Property.[1]  This request is reasonable and necessary, as the City has asserted that the current use is not allowed as the Property is zoned.  If the accommodation were granted, the occupants would continue to abide by all laws applicable to a similarly sized family.

Please let me know if my client will be granted a reasonable accommodation by the City of Manchester as requested herein (to operate a sober recovery home for disabled individuals with the same occupancy afforded a family of similar size).  If you require additional information to evaluate this request, please make a written request for such so that we may promptly respond.

My client looks forward to working with the City of Manchester to provide housing for an underserved population.  Please provide a timely response to this letter so that any valid concerns may be addressed, as Federal law does not permit a municipality to impose any special requirements to exclude disabled individuals from housing opportunities.

Sincerely,

Andrew J. Tine

---

[1] The property is currently being occupied by a "family" as defined by the City of Manchester Zoning Ordinance, however, the City appears to be ignoring this definition in application to this protected class.



# City of Manchester
## Planning & Community Development
### One City Hall Plaza-West Wing
### Manchester, NH 03101
### (603) 624-6475
### www.manchesternh.gov

**Leon L. LaFreniere, AICP**
**Director**

**Pamela H. Goucher, AICP**
Deputy Director Planning & Zoning

**Michael J. Landry, PE, Esq.**
Deputy Director Building Regulations

## VARIANCE CRITERIA

| Complete this form and attach 10 copies along with any supplemental material that would support your appeal. |
| --- |

*Deadline for Next Hearing:*_____

**Property Location:** 296 Orange Street

**Owner:** Orange Street 296, LLC

**Address:** 33 Crank Falls Road, Hampton Falls, NH 03844

**Phone #:** 781-248-3360

**Email:** jonathan@intoaction.net

**Applicant:** Orange Street 296, LLC

**Address:** 273 Dubuque Street

Manchester, NH 03102

**Phone #:** 781-248-3360

**Email:** jonathan@intoaction.net

**Relief Sought From Section(s):** Find occupants qualify as a Family or grant reasonable accommodation under FHA from Family definition or R-2 zoning limitations

1. **The variance would not be contrary to the public interest because:** The unrelated disabled occupants live in a structured relationship constituting an organized housekeeping unit, a "family" may use the property as currently occupied without any special permission or approval.

2. **The spirit of the ordinance is observed because:** A structured relationship constituting an organized housekeeping unit is being maintained.

3. **Substantial justice would be done because:** Individuals in recovery need access to safe, affordable housing that promotes recovery. Denying such access to housing would promote discrimantory exclusion from desirable neighborhoods for individuals in recovery.

4. **The values of surrounding properties would not be diminished because:** The use is similar in nature to the surrounding properties, except the occupants are disabled, having no impact upon the neighborhood.

5. **Literal enforcement of the provisions of the ordinance would result in unnecessary hardship if:**

   **(A)** Owing to the following special conditions of the property that distinguish it from other properties in the area:
      i. No fair and substantial relationship exists between the general purposes of the ordinance provisions and the specific application of that provision to the property; **and**
      ii. The proposed use is a reasonable one.

   The occupancy fits the definition of a family under the City's zoning. If this board does not find literal compliance with the definition, the use is reasonable given the unrelated, disabled occupants need access to safe, affordable, structured housing and to lose same would be a substantial hardship.

   **Or (B)** Owing to the following special conditions of the property that distinguish it from other properties in the area, the property cannot be reasonably used in strict conformance with the ordinance, and a variance is therefore necessary to enable a reasonable use of it.

_____
_____

_____
*Applicant Signature*

Lamya A. Forghany
*Print Name*
Jonathan Gerson

5-22-21

5/25/21
*Date*



**City of Manchester**
**Planning & Community Development**
**One City Hall Plaza-West Wing**
**Manchester, NH  03101**
**(603) 624-6475**
www.manchesternh.gov

**Leon L. LaFreniere, AICP**
**Director**

**Pamela H. Goucher, AICP**
Deputy Director Planning & Zoning

**Michael J. Landry, PE, Esq.**
Deputy Director Building Regulations

# AFFIDAVIT FORM

I, the undersigned, owner of the property at 296 Orange Street

hereby verify that I have authorized Andrew J. Tine to apply to

the Planning & Community Development Department of the City of Manchester, New Hampshire, for the

following:

1) Use of the property as a single family by the current occupants, 2) a reasonable accommodation to be

treated like a family or 3) use of the property as a congregate living in an R-2.

This relief is requested pursuant to the City's variance process, however, such reasonable accommodation

sought is pursuant to the Fair Housing Act.

_____

_____

_____

_____

_____

*Owner's Signature*    Jonathan Gerson

    Lamya A. Forghany
_____
*Printed Name*

*Address of Owner*    273 Dubuque Street
    Manchester, NH 03102

5/25/21
_____
*Date*

**EXHIBIT LIST – 296 Orange Street 296 – Variance**

**Exhibit 1 – Deed**

**Exhibit 2 – GIS Map**

**Exhibit 3 – Property Card**

**Exhibit 4 – Plot Plan and Floor Plans**

**Exhibit 5 – Abutter List**

**Exhibit 6 – Request for Reasonable Accommodation**

> **a) Letter dated March 24, 2020**
> **b) Letter dated April 19, 2021**
> **c) Case Law supporting granting reasonable accommodation.**

# EXHIBIT 6 (c)

**Please accept this letter in support of the request for a reasonable**

**accommodation as to 296 Orange Street, Manchester, NH.**

Property Address:  296 Orange Street
Style of Home:  Single Family
Lot Size: 8,250 sq.ft.
Living Area of Home: 2,318 sq.ft.
Parking Spaces: 4+
Total Number of Occupants: 11
Rooms: 11 total rooms including breezeway, with 6 bedrooms and 2 baths

The property is a sober recovery home for women.  It is a structured living environment for individuals in recovery from substance use.  The sober home has rules that apply to all occupants to provide an organized housekeeping unit that practices abstinence and the twelve-step recovery plan.  The occupants supply their own food, cook in a common kitchen, have group meals, watch TV together and support each other, like siblings.  They clean the house, share chores, and have weekly house meetings to talk about their recovery and house duties.  The house provides all utilities, furnishings, and kitchenware.  Residents pay a fixed weekly rental fee to share the house, with housemates in recovery, and to have a bed in a shared room.  Rooms are not rented, bedrooms do not have locks, and the environment does not promote isolation or isolated living, which may not be supportive for recovery.

The allowed uses in an R-2 zone are single family and two-family homes. The definition of a family under the code is "A group of individuals, whether or not related, living together in a dwelling unit in a structured relationship constituting an organized housekeeping unit."  Under the zoning ordinance a "Family" may live in an R-2 zone without any special permission from the City.

A family need not be related individuals, the unrelated individuals simply need to live in a structured relationship constituting an organized housekeeping unit.  As is set forth in the papers submitted, the house is a structured and organized housekeeping unit.  This can be attested to at a public hearing.

Thus, the relief first requested of this board is that the current occupancy be deemed a "family" as that definition exists under the zoning ordinance and upon that finding, no other relief would be required as to the legal occupancy.

The second, and alternative relief requested from this Board is to be granted a reasonable accommodation under the Fair Housing Act.  Individuals in recovery from substance use are considered disabled under the Fair Housing Act.  The reasonable accommodation sought from the City is to treat this sober house occupancy the same as a single family, so that no special permission is required for these unrelated disabled individuals to live together in an R-2.

Lastly, if this board finds that the property is not being occupied by a "family" as defined under the code or by granting a reasonable accommodation, a reasonable accommodation is sought to occupy the house as "congregate housing." Congregate housing is an allowed use in an R-3 but not R-2.  Congregate Housing is defined as "Multifamily housing or other dwelling units serving individuals who require on-site services that support independent living, including, at a minimum, communal dining facilities. Congregate housing may be characterized by on-site personal care services, housekeeping and linen service, and the supervision of self-administered medication, but excluding 24-hour nursing care."  This property has one on-site manager per who provides support and structure, through rules and the assistance of off-site management.  The property has one communal kitchen and dining area.  Resident medication is

overseen to ensure there is no abuse.  This is no 24-hour nursing care or medical care.

Thus, in the alternative to being defined as a "family," we seek to have the occupancy deemed Congregate Housing and be given a reasonable accommodation under the Fair Housing Act to exist in this zone.

We would like to provide a summary of the standard for providing a reasonable accommodation.

The failure to provide a reasonable accommodation is an independent form of discrimination under the FHA.  *United States v. City of Philadelphia*, 838 F. Supp. 223, 229 (E.D. Pa. 1993), *aff'd mem.*, 30 F.3d 1488 (3d Cir. 1994).  The failure of zoning officials to allow for "reasonable accommodations" in their policies to allow persons with disabilities to live in the community will violate the FHA regardless of whether the officials acted with discriminatory animus. *Community Services, Inc. v. Wind Gap Municipal Authority, 42 F.3d 170, 177 (3d Cir. 2005) and Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 561-62 (7th Cir. 2003).

"[T]he FHA defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped individual] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The concept of "equal opportunity" under the FHA generally means providing people with disabilities with the right to choose to live in single-family neighborhoods so as to end their exclusion from the American mainstream.  *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784

(7th Cir. 2002); *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 459 (3d Cir. 2002); *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002).

"The reasonableness requirement calls for a fact bound balancing of the benefits that would accrue to the handicapped individual against the burdens that the accommodation would entail. *See Valencia*, 883 F.3d at 968; *Anderson v. City of Blue Ash*, 798 F.3d 338, 362 (6th Cir. 2015); *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013). The burdens that may be given weight in this balancing include both financial costs and practical detriments to the City, as well as less tangible effects on the public. *See Valencia*, 883 F.3d at 968. Typically, "[a]n accommodation is 'reasonable' when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens'" on the City. *Batista v. Cooperativa de Vivienda Jardines de San Ignacio*, 776 F.3d 38, 43 (1st Cir. 2015) (quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)). Thus, a person is not entitled to a waiver of a zoning or building-code rule if the waiver "is so 'at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.'" *Valencia*, 883 F.3d at 968 (quoting *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002))." *Jeffrey D. Summer et al. v. City of Fitchburg et al.*, United States Court of Appeals, First Circuit, No. 18-1725, (October 8, 2019).  Speculation concerning potential burdens resulting from the accommodation is insufficient to render a requested accommodation unreasonable.  *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 785-87 (7th Cir. 2002).

An accommodation is "necessary" if, but for the accommodation, the plaintiff is likely to be denied an equal opportunity to enjoy the housing of their

choice.  *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300

F.3d 775, 784 (7th Cir. 2002); *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284

F.3d 442, 460 (3d Cir. 2002); *Howard v. City of Beavercreek*, 276 F.3d 802, 806

(6th Cir. 2002); *Dr. Gertrude A. Barber Center, Inc. v. Peters Township*, 273 F.

Supp. 2d 643, 653 (W.D. Pa. 2003); *United States v. City of Chicago Heights*, 161 F.

Supp. 2d 819, 834 (N.D. Ill. 2001).

    "Necessity" can be supported by evidence of functional gains experienced

by persons with disabilities through residence in the community.  *Lapid-Laurel,*

*L.L.C.,* 284 F.3d at 461. "Necessity" can also be demonstrated through evidence

that placement in small neighborhood-based homes serves a therapeutic

purpose. *Bryant Woods Inn., Inc. v. Howard County,* 124 F.3d 597, 604 (4th Cir.

1997).

    Thus, it being reasonable and necessary to treat this unrelated group of

disabled individuals the same as a family to provide access to housing at 296

Orange Street, a reasonable accommodation should be granted as requested.

    Lastly, I would like to note that a rooming house is not an allowed use in an

R-2.  This is not a rooming house.   A rooming house rents rooms, not dwelling

units with kitchens and eating facilities.  Rooming houses have locked bedrooms

and no social support structure.  This home has a support structure in place for

individuals in recovery, they practice abstinence and peer supported recovery.  As

such, we deny that a rooming house is the actual or intended use of the property.

# EXHIBIT D



**City of Manchester**
**Planning & Community Development**
One City Hall Plaza-West Wing
Manchester, NH  03101
(603) 624-6475
www.manchesternh.gov

**Leon L. LaFreniere, AICP**
Director

**Pamela H. Goucher, AICP**
Deputy Director Planning & Zoning

**Michael J. Landry, PE, Esq.**
Deputy Director Building Regulations

## VARIANCE CRITERIA

Complete this form and attach 10 copies along with any supplemental material that would support your appeal.

*Deadline for Next Hearing:* _____

Property Location: 155 Grand Avenue

Owner: Quasar LLC

Address: 342 Cool Springs Blvd, Franklin TN 37067          Phone #: _____

Email: _____

Applicant: RESIDENTS OF 155 GRAND AVENUE (identified below) and Adira Sober Living, LLC

Address: 155 Grand Avenue          Phone #: 617-755-5770

Email: atine@tinelaw.com

Relief Sought From Section(s): Find occupants qualify as a Family or grant reasonable accommodation under FHA from Family definition or R-1B zoning limitations

1. The variance would not be contrary to the public interest because: The unrelated disabled occupants live in a structured relationship constituting an organized housekeeping unit, a "family" may use the property as currently occupied without any special permission or approval.

2. The spirit of the ordinance is observed because: A structured relationship constituting an organized housekeeping unit is being maintained.

3. Substantial justice would be done because: Individuals in recovery need access to safe, affordable housing that promotes recovery. Denying such access to housing would promote discriminatory exclusion from desirable neighborhoods for individuals in recovery.

4. The values of surrounding properties would not be diminished because: The use is similar in nature to the surrounding properties, except the occupants are disabled, having no impact upon the neighborhood.

5. Literal enforcement of the provisions of the ordinance would result in unnecessary hardship if:

    (A) Owing to the following special conditions of the property that distinguish it from other properties in the area:
        i. No fair and substantial relationship exists between the general purposes of the ordinance provisions and the specific application of that provision to the property; and
        ii. The proposed use is a reasonable one.

    The occupancy fits the definition of a family under the City's zoning. If this board does not find literal compliance with the definition, the use is reasonable given the unrelated, disabled occupants need access to safe, affordable, structured housing and to lose same would be a substantial hardship.

    Or (B) Owing to the following special conditions of the property that distinguish it from other properties in the area, the property cannot be reasonably used in strict conformance with the ordinance, and a variance is therefore necessary to enable a reasonable use of it.

_____

_____

_____
Applicant Signature          Mackenzie Seely          11/16/21
                             Print Name               Date

**City of Manchester**
**Planning & Community Development**

Leon L. LaFreniere, AICP

**Director**

One City Hall Plaza-West Wing
Manchester, NH  03101
(603) 624-6475
www.manchesternh.gov

Pamela H. Goucher, AICP
Deputy Director Planning & Zoning

Michael J. Landry, PE, Esq.
Deputy Director Building Regulations

## AFFIDAVIT FORM

I, the undersigned, ~~owner~~ residents and lessee of the property at 155 Grand Ave

hereby verify that I have authorized Andrew J. Tine _____ to apply to

the Planning & Community Development Department of the City of Manchester, New Hampshire, for the

following:

1) Use of the property as a single family by the current occupants, 2) a reasonable accommodation to be

treated like a family or 3) use of the property as a congregate living in an R-1B.

This relief is requested pursuant to the City's variance process, however, such reasonable accommodation

sought is pursuant to the Fair Housing Act.

*Applicants' Signatures:*

*Sublessee*

*Sublessee*

Jo Apostolos
**Printed Name**

Jennifer Vallier
**Printed Name**

CYNTHIA A. ROSS

**City of Manchester**
**Planning & Community Development**

Leon L. LaFreniere, AICP

_____
*Sublessee*

Claire Aho
*Printed Name*

_____
*Sublessee*

CYNTHIA A. ROSS
*Printed Name*

_____
*Sublessee*

Rachel Lavoie
*Printed Name*

_____
*Sublesee*

_____
*Printed Name*

_____
*Sublessee*

_____
*Printed Name*

_____
*Adina Sober Living, LLC, Lessee*

Mackenzie Seely
*Printed Name*

_Andrew J. Tine, 18 Maple Ave., Barrington, RI 02806_
*Name and Address of Legal Representative*

_11/17/21_
*Date*

# EXHIBIT LIST

## 155 Grand Avenue, Manchester, NH – Variance/Request for Reasonable Accommodation

**Exhibit 1 – Deed**

**Exhibit 2 – GIS Map**

**Exhibit 3 – Property Card**

**Exhibit 4 – Plot Plan and Floor Plans**

**Exhibit 5 – Abutter List**

**Exhibit 6 – Request for Reasonable Accommodation**

      **a) Letter dated August 5, 2021**
      **b) Letter dated August 27, 2021**
      **c)  HUD Complaint**
      **d) Law supporting granting reasonable accommodation.**

# EXHIBIT 1

Return to:
Quasar, LLC
342 Cool Spring BLVD Suite 100
Franklin, TN 37067

E- Doc # 210027073          04/20/2021 10:40:11 AM
Book 9457 Page 2196          Page 1 of 3
                    **Mary Ann Crowell**
            **Register of Deeds, Hillsborough County**
            **LCHIP      HIA606315          25.00**
            **TRANS TAX  HI134297          4,725.00**

## WARRANTY DEED

Frances Wurtele, single, Trustee of the Rita Taillon and Henry P. Taillon Irrevocable Trust, of 16 Evelyn Street, Hooksett, NH 03106, for consideration paid grant to Quasar, LLC, a Tennessee Limited Liability Company, of 342 Cool Springs Boulevard Suite 100, Franklin, TN 37067, with warranty covenants;

A certain parcel of land with the buildings thereon situated in Manchester known as Lot 110 on Plan of Manchester Heights made by Frank A. Gay, C.E., dated April 21, 1906 Registered in the Hillsborough County Records as Plan 315.

Also another lot of land with buildings thereon known as Lot 111 on same plan by Frank A. Gay, recorded as Plan 315.

Subject to any and all matters as shown on Plan #315.

For Title Reference, see conveyance to Rita Taillon and Henry Taillon, Trustees of the Rita Taillon and Henry P. Taillon Irrevocable Trust by Quitclaim Deed from Rita Taillon and Henry Taillon, dated February 15, 1993 and recorded in Book 5410, Page 1665 of the Hillsborough County Registry of Deeds.

The property is not the residence of the grantor and is not subject to homestead rights.

155 Grand Avenue, Manchester, NH 03109

LLO

**Book: 9457   Page: 2197**

Executed this 20th day of April, 2021.

_Frances Wurtele, Trustee_

Frances Wurtele, Trustee of the Rita Taillon
and Henry P. Taillon Irrevocable Trust

## STATE OF NEW HAMPSHIRE

Hillsborough, SS

Then personally appeared before me on this 20th day of April, 2021, the said Frances
Wurtele, Trustee of the Rita Taillon and Henry P. Taillon Irrevocable Trust and
acknowledged the foregoing to be her voluntary act and deed.

Notary Public/~~Justice of the Peace~~
My commission expires:

**Book: 9457 Page: 2198**

Return to:

## TRUSTEE CERTIFICATE

The undersigned trustee, Frances Wurtele, Trustee of the Rita Taillon and Henry P. Taillon Irrevocable Trust created by Rita Taillon and Henry P. Taillon as grantor under trust agreement dated December 15, 1992 and thereto has full and absolute power in said trust agreement to convey any interest in real estate and improvements thereon held in said trust and no purchaser or third party shall be bound to inquire whether the trustee has said power or is properly exercising said power or to see to the application of any trust asset paid to the trustee for a conveyance thereof.

Executed this 20th day of April, 2021, by:

**Rita Taillon and Henry P. Taillon Irrevocable Trust**

By: _Frances Wurtele, Trustee_
Frances Wurtele, Trustee

State of New Hampshire
County of Hillsborough

This instrument was acknowledged before me on April 20, 2021 by Frances Wurtele, Trustee of the Rita Taillon and Henry P. Taillon Irrevocable Trust.

_Susan C. _____
Signature of notarial officer
(Seal, if any)
Title (and Rank):
My commission expires:



LLO

# EXHIBIT 2

Case 1:22-cv-00228-LM    Document 1    Filed 06/23/22    Page 42 of 80

## City of Manchester, NH - Public GIS Map Viewer
### Parcel Information Printable View

**Print**    **Close**

**Disclaimer:** The information furnished here is for the convenience of the user and is not an official public record of the City of Manchester, NH (the "City"). It is provided as a service to the general public. The City makes no warranties, expressed or implied, concerning the accuracy, completeness, reliability, or suitability of this information for any particular use. The City assumes no liability whatsoever associated with the use or misuse of this information. The names of some owners may have been omitted in order to protect their security. The official public records from which this information was compiled are kept in various offices located at One City Hall Plaza, Manchester, New Hampshire and are available for inspection and copying during normal business hours.

## Map-Lot: 302-3A

| | |
|---|---|
| Parcel Location: | **155 GRAND AVE** |
| Owner Name: | **QUASAR LLC** |
| Mailing Address: | **342 COOL SPRINGS BLVD STE 100** |
| Mailing City State Zip: | **FRANKLIN  TN  37067** |
| Assessed Valuation: | **305,500** |
| Land Area (acres): | **.20661157** |
| Land Area (sq ft): | **9,000** |
| Land Use: | **Single Fam** |
| Building Style: | **Bungalow** |
| Stories: | **1.50** |
| Year Built: | **1930** |
| Exterior Siding: | **Vinyl Siding** |
| Roof Structure: | **Gable/Hip** |
| Roof Cover: | **Asphalt** |
| Gross Building Area (sq ft): | **3,367** |
| Living Area (sq ft): | **1,819** |
| Rooms: | **8** |
| Bedrooms: | **4** |
| Bathrooms: | **1** |
| Interior Walls: | **Plastered, Plywood Panel** |
| Interior Flooring: | **Carpet, Pine/Soft Wood** |
| Heating Fuel: | **Oil** |
| Heating System: | **Hot Water** |
| Air Conditioning: | **None** |
| Sale Date: | **2021-04-20 00:00:00.** |
| Sale Price: | **$315,000** |
| Book/Page: | **9457/2196** |
| Last Updated Date: | **2021-09-06 20:18:21.** |



# EXHIBIT 3

# 155 GRAND AV

| | | | |
|---|---|---|---|
| **Location** | 155 GRAND AV | **Mblu** | 0302/ / 0003/A / |
| **Owner** | QUASAR LLC | **Assessment** | $305,500 |
| **Building Count** | 1 | | |

## Current Value

| Assessment | |
|---|---|
| **Valuation Year** | **Total** |
| 2021 | $305,500 |

## Owner of Record

| | | | |
|---|---|---|---|
| **Owner** | QUASAR LLC | **Sale Price** | $315,000 |
| **Co-Owner** | | **Certificate** | |
| | | **Book & Page** | 9457/2196 |
| | | **Sale Date** | 04/20/2021 |
| | | **Instrument** | 81 |

## Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| Owner | Sale Price | Certificate | Book & Page | Instrument | Sale Date |
| QUASAR LLC | $315,000 | | 9457/2196 | 81 | 04/20/2021 |
| TAILLON, HENRY | $4,000 | | 5410/1665 | 04 | 02/15/1993 |
| TAILLON, HENRY | $0 | | 0/0 | | |

## Building Information

### Building 1 : Section 1

| | |
|---|---|
| **Year Built:** | 1930 |
| **Living Area:** | 1,819 |
| **Replacement Cost Less Depreciation:** | $200,100 |

| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Style: | Bungalow |
| Model | Residential |
| Grade: | Average |

| Stories: | 1 1/2 Stories |
|---|---|
| Occupancy | 1 |
| Exterior Wall 1 | Vinyl Siding |
| Exterior Wall 2 | |
| Roof Structure: | Gable/Hip |
| Roof Cover | Asphalt |
| Interior Wall 1 | Plastered |
| Interior Wall 2 | Plywood Panel |
| Interior Flr 1 | Carpet |
| Interior Flr 2 | Pine/Soft Wood |
| Heat Fuel | Oil |
| Heat Type: | Hot Water |
| AC Type: | None |
| Total Bedrooms: | 4 Bedrooms |
| Total Bthrms: | 1 |
| Total Half Baths: | 0 |
| Total Xtra Fixtrs: | |
| Total Rooms: | 8 |
| Bath Style: | Average |
| Kitchen Style: | Average |
| Num Kitchens | 01 |
| Cndtn | |
| Num Park | |
| Fireplaces | |
| MHP | |
| Fndtn Cndtn | |
| Basement | |

### Building Photo



(http://images.vgsi.com/photos/ManchesterNHPhotos/\00\06\87\92.JPG)

### Building Layout



(http://images.vgsi.com/photos/ManchesterNHPhotos//Sketches/8581_85

| Building Sub-Areas (sq ft) | | | |
|---|---|---|---|
| Code | Description | Gross Area | Living Area |
| BAS | First Floor | 1,026 | 1,026 |
| TQS | Three Quarter Story | 936 | 702 |
| FHS | Half Story, Finished | 182 | 91 |
| FEP | Porch, Enclosed, Finished | 197 | 0 |
| HBM | Half Fin Bsmnt | 936 | 0 |
| UBM | Basement, Unfinished | 90 | 0 |
| | | 3,367 | 1,819 |

## Extra Features

| Extra Features |
|---|
| No Data for Extra Features |

## Land

**Land Use**                                                    **Land Line Valuation**

**Use Code**    1010                          **Size (Sqr Feet)**   9000
**Description**   SINGLE FAM

## Outbuildings

| | Outbuildings | |
|---|---|---|
| **Code** | **Description** | **Size** |
| FGR1 | GARAGE-AVE | 440.00 S.F. |
| SHD1 | SHED FRAME | 109.00 S.F. |
| SHD2 | W/LIGHTS ETC | 168.00 S.F. |
| PAT1 | PATIO-AVG | 168.00 S.F. |

## Valuation History

| Assessment | |
|---|---|
| **Valuation Year** | **Total** |
| 2020 | $196,800 |
| 2019 | $196,800 |
| 2018 | $196,800 |

(c) 2021 Vision Government Solutions, Inc. All rights reserved.

# EXHIBIT 4



DISCLAIMER

The information appearing on this map is for the convenience of the user and is not an official record of the City of Manchester, NH ("the City"). The maps are not surveys. All boundaries, easements, areas, measurements, rights-of-way, etc. appearing on this map should only be considered approximations, and as such have no official or legal value. The City makes no warranties, expressed or implied, concerning the accuracy, completeness, reliability, or suitability of the information for any particular use. The City assumes no liability whatsoever associated with the use or misuse of this information. The official public records from which this information was compiled are kept in the offices of various City, County and State government agencies and departments, and are available for inspection and copying during normal business hours. By using this map, you agree to these terms and conditions.

City of Manchester, New Hampshire – CityGIS Map Print

302-17   161

302-16   78

302-15   45

100   S 15-77   302-2

110

302-3A   9000   6   7   45

100   111   112   302-4

45

155

GRAND AVE

20 Feet







E. ROY

PETER HARLAN

S 09°-35'-00"W        S 09°-35'-00"W

DRILL HOLE
SET 3-29-77

70.00

75.00

DRILL HOLE
SET 3-29-77

DRILL HOLE
SET 3-29-77

EXISTING
2 STALL
GARAGE

LOT 1
7000.0ᵈ

S 80°-25'-00"E

100.00

EXISTING

HOUSE

N 80°-25'-00"W

100.00

LOT 2
7500.0ᵈ

N 80°-25'-00"W

100.00

ARCHIE BEAULAC

HENRY TALLION

EXISTING GARAGE

EXISTING GARAGE

OAK HUB
SET 3-29-77

70.00

OAK HUB
SET 3-29-77

75.00

OAK HUB
SET 3-29-77

100.00

N 09°-35'-00"E

N 09°-35'-00"E

P.S. Co.
14

P.S. Co.
13

GRAND                    AVE.

50

(PAVEMENT)

CATHRINE BARNEA        ARTHUR HOUDE        JOSEPH CARNANINI

MINOR SUBDIVISION

ADJUTOR VAILLANCOURT

MANCHESTER

ROCKINGHAM COUNTY

NEW HAMPSHIRE

I HEREBY CERTIFY THAT THIS PLAN IS
BASED ON AN ACTUAL SURVEY AND
HAS MAXIMUM ERROR OF CLOSURE OF 1
IN 10,000 ON ALL PROPERTY LINES WITHIN
AND BORDERING THE SUBJECT PROPERTY.

THE STATE OF NEW HAMPSHIRE
ROLAND
P.
THERRIEN
No. 167
REGISTERED LAND SURVEYOR

SCALE 1 INCH ='S 20 FEET



155 GRAND AVENUE



1st Floor





# EXHIBIT 5

**ABUTTERS LIST**

1. Susan Blevins, 181 Grand Ave, Manchester, NH 03109

2. Gustavis J. Carrozzini, 145 Grand Ave, Manchester, NH 03109

3. Kerry Jean Holloran, 158 Grand Ave, Manchester, NH 03109

4. Jonathan M. Figueroa, 178 Grand Ave, Manchester, NH 03109

5. Amanda L. Murphy, 166 Portsmouth Ave, Manchester, NH 03109

6. Gary G. Gilman, 176 Portsmouth Ave, Manchester, NH 03109

7. Leonard Murphy, 188 Portsmouth Ave, Manchseter, NH 03109

# EXHIBIT 6

LAW OFFICES OF

# ANDREW J. TINE

ATTORNEY AT LAW

Via Email and US Mail

August 27, 2021

Mr. Michael Landry
Planning and
Community Development
One City Hall Plaza
Manchester, NH 03101

> **Re:**   **155 Grand Avenue, Manchester, NH**
> **REQUEST FOR REASONABLE ACCOMMODATION UNDER THE**
> **FAIR HOUSING ACT**

Dear Mr. Landry:

This letter responds to your letter dated August 13, 2021.  I was on vacation and then had a jury trial, so there is a delay in responding to your letter.  Based upon these conflicts, I requested until September 15, 2021 to seek a variance or other administrative relief.  Your letter provided an extension through today to seek a variance.  This deadline could not be met under any set of circumstances.  As you know, the variance process is onerous in that it requires information that a tenant would not possess and it would be extremely costly to pursue.

Further, I recently went through this onerous process with the ZBA as to 296 Orange Street, only to be denied any relief.  This house is in same situation as 296 Orange Street.  The ZBA has taken the position that since congregate housing may be available in other zones/neighborhoods, that no accommodation is necessary if the type of housing is not expressly permitted by zoning. A submission to the ZBA for this accommodation would be a fruitless exercise.  Thus, my client is not willing to spend thousands of dollars to submit for a reasonable accommodation to the ZBA through a framework structured for variances (the information necessary for a variance is not relevant to the subject request to treated like a family), where no relief is to be had.

Instead, my client has submitted a complaint to HUD for assistance in this matter.  We hope HUD and DOJ will provide equitable relief for my client.

Given my client does not have the financial resources to pursue the City's costly variance process and litigate with the City upon denial of relief, they will move this sober housing from Manchester.  They need 6 months to do this.  This letter is a request for an accommodation of 6 months for the residents to live at the property without interference, penalty or suit by the City, so that they can arrange for alternative housing.  A failure to grant this requested accommodation, will be submitted to HUD has a second violation of the Fair Housing Act, should the City refuse to grant same.

18 MAPLE AVENUE- BARRINGTON, RHODE ISLAND 02806- 401.396.9002
LICENSED- MASSACHUSETTS AND RHODE ISLAND

We look forward to hearing from you.

Sincerely,

Andrew J. Tine

LAW OFFICES OF

# ANDREW J. TINE

ATTORNEY AT LAW

Via Email (jnazaka@manchesternh.gov and llafreni@manchesternh.gov)
US Mail

August 5, 2021

Mayor Joyce Craig
City of Manchester
One City Hall Plaza
Manchester, NH 03101

Mr. Leon L. LaFreniere
Mr. Michael Landry
Planning and
Community Development
One City Hall Plaza
Manchester, NH 03101

> Re:   **155 Grand Avenue, Manchester, NH**
> **REQUEST FOR REASONABLE ACCOMMODATION UNDER THE**
> **FAIR HOUSING ACT**

Dear Mayor Craig, Mr. Freniere and Mr. Landry:

This office represents Mackenzie Seely ("Seely"), the lessee of 155 Grand Avenue, Manchester, NH (the "Property"). This letter is a request for a reasonable accommodation under the federal Fair Housing Act, as Amended ("FHA").

The Property is being used as a sober recovery home for unrelated disabled individuals living in a structured relationship and organized housekeeping unit. This Property is occupied by six unrelated women in recovery from substance use. They are considered disabled.

The City's Zoning Ordinance defines a "Family" as: "A group of individuals, whether or not related, living together in a dwelling unit in a structured relationship constituting an organized housekeeping unit." The City's definition of a family allows unrelated individuals to live together in unlimited numbers (obviously as limited by other code requirements). However, the City has a limit on the number of disabled individuals that may live together. Per HUD and the DOJ, this policy and application of the Zoning Ordinance violates Federal Law, as a matter of law.

HUD and the DOJ have issued a policy statement, stating: "Local zoning and land use laws that treat groups of unrelated persons with disabilities less favorably than similar groups of unrelated persons without disabilities violate the Fair Housing Act. For example, suppose a city's zoning ordinance defines a "family" to include up to a certain number of unrelated persons living together as a household unit, and gives such a group of unrelated persons the right to live in any

1

zoning district without special permission from the city.  If that ordinance also prohibits a group home having the same number of persons with disabilities in a certain district or requires it to seek a use permit, the ordinance would violate the Fair Housing Act. The ordinance violates the Act because it treats persons with disabilities less favorably than families and unrelated persons without disabilities."  <u>See Exhibit A</u> *JOINT STATEMENT OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND THE DEPARTMENT OF JUSTICE* dated November 10, 2016 (excerpt).

As such, Seely seeks a reasonable accommodation to use the Property to the same extent and under the same laws as any single "family," as family is defined under the City's Zoning Ordinance.

Separately, we request that the City not take any further action against the Property until the requested reasonable accommodation is allowed or denied, so that Seely may pursue additional legal remedies if necessary. We further request that the City allow through 9/15/21 for Seely to seek a variance or other administrative relief, should the City deny her requested accommodation and she opt to pursue those administrative options.  Please confirm this is agreeable.

We look forward to hearing from you.

Sincerely,

Andrew J. Tine



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY



**U.S. DEPARTMENT OF JUSTICE**
CIVIL RIGHTS DIVISION

*Washington, D.C.*
*November 10, 2016*

## JOINT STATEMENT OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND THE DEPARTMENT OF JUSTICE

## STATE AND LOCAL LAND USE LAWS AND PRACTICES AND THE APPLICATION OF THE FAIR HOUSING ACT

## INTRODUCTION

The Department of Justice ("DOJ") and the Department of Housing and Urban Development ("HUD") are jointly responsible for enforcing the Federal Fair Housing Act ("the Act"),[1] which prohibits discrimination in housing on the basis of race, color, religion, sex, disability, familial status (children under 18 living with a parent or guardian), or national origin.[2] The Act prohibits housing-related policies and practices that exclude or otherwise discriminate against individuals because of protected characteristics.

The regulation of land use and zoning is traditionally reserved to state and local governments, except to the extent that it conflicts with requirements imposed by the Fair Housing Act or other federal laws. This Joint Statement provides an overview of the Fair Housing Act's requirements relating to state and local land use practices and zoning laws, including conduct related to group homes. It updates and expands upon DOJ's and HUD's Joint

---

[1] The Fair Housing Act is codified at 42 U.S.C. §§ 3601–19.

[2] The Act uses the term "handicap" instead of "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that the definition of "disability" in the Americans with Disabilities Act

1

**12. Can a state or local government enact laws that specifically limit group homes for individuals with specific types of disabilities?**

No.  Just as it would be illegal to enact a law for the purpose of excluding or limiting group homes for individuals with disabilities, it is illegal under the Act for local land use and zoning laws to exclude or limit group homes for individuals with specific types of disabilities.  For example, a government may not limit group homes for persons with mental illness to certain neighborhoods.  The fact that the state or local government complies with the Act with regard to group homes for persons with some types of disabilities will not justify discrimination against individuals with another type of disability, such as mental illness.

**13. Can a state or local government limit the number of individuals who reside in a group home in a residential neighborhood?**

Neutral laws that govern groups of unrelated persons who live together do not violate the Act so long as (1) those laws do not intentionally discriminate against persons on the basis of disability (or other protected class), (2) those laws do not have an unjustified discriminatory effect on the basis of disability (or other protected class), and (3) state and local governments make reasonable accommodations when such accommodations may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling.

Local zoning and land use laws that treat groups of unrelated persons with disabilities less favorably than similar groups of unrelated persons without disabilities violate the Fair Housing Act.  For example, suppose a city's zoning ordinance defines a "family" to include up to a certain number of unrelated persons living together as a household unit, and gives such a group of unrelated persons the right to live in any zoning district without special permission from the city.  If that ordinance also prohibits a group home having the same number of persons with disabilities in a certain district or requires it to seek a use permit, the ordinance would violate the Fair Housing Act.  The ordinance violates the Act because it treats persons with disabilities less favorably than families and unrelated persons without disabilities.

A local government may generally restrict the ability of groups of unrelated persons to live together without violating the Act as long as the restrictions are imposed on all such groups, including a group defined as a family.  Thus, if the definition of a family includes up to a certain number of unrelated individuals, an ordinance would not, on its face, violate the Act if a group home for persons with disabilities with more than the permitted number for a family were not allowed to locate in a single-family-zoned neighborhood because any group of unrelated people without disabilities of that number would also be disallowed.  A facially neutral ordinance, however, still may violate the Act if it is intentionally discriminatory (that is, enacted with discriminatory intent or applied in a discriminatory manner), or if it has an unjustified

## **HOUSING DISCRIMINATION COMPLAINT**

**Case Number:**

1.    **Complainants:**

Mackenzie Seely
155 Grand Avenue
Manchester, NH 03109

Amy Kontos
155 Grand Avenue
Manchester, NH 03109

Joanna Apostoles
155 Grand Avenue
Manchester, NH 03109

Renee Tonge
155 Grand Avenue
Manchester, NH 03109

Nicole Edmonds
155 Grand Avenue
Manchester, NH 03109

Clara Aho
155 Grand Avenue
Manchester, NH 03109

2.    **Complainant Representative:**

Andrew J. Tine
Law Office of Andrew J. Tine
18 Maple Avenue, Suite 267
Barrington, RI 02806

3.    **Other Aggrieved Parties:**

None identified at this time.

4.    **The following is alleged to have occurred or is about to occur:**

Discriminatory terms, conditions, privileges, services, or facilities
Otherwise make housing unavailable
Failure to make a reasonable accommodation

5.    **The alleged violation occurred because of:**

Disability

**6.    Address and location of the property in question (or if no property is involved, the city and state where the discrimination occurred):**

155 Grand Avenue
Manchester, NH 03109

**7.    Respondent:**

City of Manchester
Attn: Leon LaFreniere, Director of Planning and Community Development
One City Hall Plaza, West Wing
Manchester, NH 03101

**8.    The following is a brief and concise statement of the facts regarding the alleged violation:**

Complainant Seely leases the subject property from the property owner and operates a women's sober recovery home for the other five Complainants in Manchester, New Hampshire. Respondent has stated that Complainant Seely may not operate the home without a variance because the home is violating the Manchester Zoning Ordinance. On August 05, 2021 Complainants filed a reasonable accommodation request with Respondent to use the property to the same extent as any single "family" as defined under Respondent's zoning ordinance. Further, Complainants requested that Respondent take no action against the sober recovery home until the reasonable accommodation request was approved or denied. On September 10, 2021 Respondent mailed Complainants a summons for Complainants' use of the property and Respondent has taken action to dissolve the sober recovery home.

Complainants believe that Respondent is discriminating against the sober recovery home based on disability by not approving their reasonable accommodation request to allow the sober recovery home to operate. Further, Complainants allege that Respondent's zoning ordinance discriminates against persons with disabilities.

**9.    The most recent date on which the alleged discrimination occurred:**

September 10, 2021

**10.    Types of Federal Funding Identified:**

HUD's Office of Community Planning & Development
CDBG
HOME
Emergency Shelter Grants

**11.    The acts alleged in this complaint, if proven, may constitute a violation of the following section:**

Sections 804(f)(1) & 804(f)(2) as defined by 804(f)(3)(B) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

Section 504 of the Rehabilitation Act of 1973

Section 109 of the Housing and Community Development Act of 1974

**Please sign and date this form:**

*I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.*

|  |  |
|---|---|
| _____ | 10-1-21 |
| Complainants by their counsel, | Date |
| Andrew J. Tine | |

***N O T E: HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGANIZATION AGAINST WHOM IT IS FILED***

**Please accept this letter in support of the request for a reasonable accommodation as to 155 Grand Avenue, Manchester, NH.**

The property is a sober recovery home for women.  It is a structured living environment for individuals in recovery from substance use.  The sober home has rules that apply to all occupants to provide an organized housekeeping unit that practices abstinence and the twelve-step recovery plan.  The occupants supply their own food, cook in a common kitchen, have group meals, watch TV together and support each other, like siblings.  They clean the house, share chores, and have weekly house meetings to talk about their recovery and house duties.  The house provides all utilities, furnishings, and kitchenware.  Residents pay a fixed weekly rental fee to share the house, with housemates in recovery, and to have a bed in a shared room.  Rooms are not rented, bedrooms do not have locks, and the environment does not promote isolation or isolated living, which may not be supportive for recovery.

This property is in an R-1B zone, which allows for the legal use of this single family home.  The definition of a family under the code is "A group of individuals, whether or not related, living together in a dwelling unit in a structured relationship constituting an organized housekeeping unit."  Under the zoning ordinance a "Family" may live in an R-1B zone without any special permission from the City.

A family need not be related individuals, the unrelated individuals simply need to live in a structured relationship constituting an organized housekeeping unit.  As is set forth in the papers submitted, the house is a structured and organized housekeeping unit.  This can be attested to at a public hearing.

Thus, the relief first requested of this board is that the current occupancy be deemed a "family" as that definition exists under the zoning ordinance and upon that finding, no other relief would be required as to the legal occupancy.

The second, and alternative relief requested from this Board is to be granted a reasonable accommodation under the Fair Housing Act.  Individuals in recovery from substance use are considered disabled under the Fair Housing Act. The reasonable accommodation sought from the City is to treat this sober house occupancy the same as a single family, so that no special permission is required for these unrelated disabled individuals to live together in an R-1B zone.

Lastly, if this board finds that the property is not being occupied by a "family" as defined under the code or by granting a reasonable accommodation, a reasonable accommodation is sought to occupy the house as "congregate housing." Congregate housing is an allowed use in an R-3 but not R-1B. Congregate Housing is defined as "Multifamily housing or other dwelling units serving individuals who require on-site services that support independent living, including, at a minimum, communal dining facilities. Congregate housing may be characterized by on-site personal care services, housekeeping and linen service, and the supervision of self-administered medication, but excluding 24-hour nursing care."  This property has a house manager in recovery who provides support and structure, through rules and the assistance of off-site management. The property has one communal kitchen and dining area.  Resident medication is overseen to ensure there is no abuse.  This is no 24-hour nursing care or medical care.

Thus, in the alternative to being defined as a "family," we seek to have the occupancy deemed Congregate Housing and be given a reasonable accommodation under the Fair Housing Act to exist in this zone.

We would like to provide a summary of the standard for providing a reasonable accommodation.

The failure to provide a reasonable accommodation is an independent form of discrimination under the FHA.  *United States v. City of Philadelphia*, 838 F. Supp. 223, 229 (E.D. Pa. 1993), *aff'd mem.*, 30 F.3d 1488 (3d Cir. 1994).  The failure of zoning officials to allow for "reasonable accommodations" in their policies to allow persons with disabilities to live in the community will violate the FHA regardless of whether the officials acted with discriminatory animus. *Community Services, Inc. v. Wind Gap Municipal Authority, 42 F.3d 170, 177 (3d Cir. 2005) and Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 561-62 (7th Cir. 2003).

"[T]he FHA defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped individual] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The concept of "equal opportunity" under the FHA generally means providing people with disabilities with the right to choose to live in single-family neighborhoods so as to end their exclusion from the American mainstream.  *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002); *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 459 (3d Cir. 2002); *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002).

"The reasonableness requirement calls for a fact bound balancing of the benefits that would accrue to the handicapped individual against the burdens that the accommodation would entail. *See Valencia*, 883 F.3d at 968; *Anderson v. City of Blue Ash*, 798 F.3d 338, 362 (6th Cir. 2015); *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013). The burdens that may be given weight in this balancing include both financial costs and practical detriments to the City, as well as less tangible effects on the public. *See Valencia*, 883 F.3d at 968. Typically, "[a]n accommodation is 'reasonable' when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens'" on the City. *Batista v. Cooperativa de Vivienda Jardines de San Ignacio*, 776 F.3d 38, 43 (1st Cir. 2015) (quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002)). Thus, a person is not entitled to a waiver of a zoning or building-code rule if the waiver "is so 'at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.'" *Valencia*, 883 F.3d at 968 (quoting *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002))." *Jeffrey D. Summer et al. v. City of Fitchburg et al.*, United States Court of Appeals, First Circuit, No. 18-1725, (October 8, 2019).  Speculation concerning potential burdens resulting from the accommodation is insufficient to render a requested accommodation unreasonable.  *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 785-87 (7th Cir. 2002).

An accommodation is "necessary" if, but for the accommodation, the plaintiff is likely to be denied an equal opportunity to enjoy the housing of their choice.  *See Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002); *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284

F.3d 442, 460 (3d Cir. 2002); *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th Cir. 2002); *Dr. Gertrude A. Barber Center, Inc. v. Peters Township*, 273 F. Supp. 2d 643, 653 (W.D. Pa. 2003); *United States v. City of Chicago Heights*, 161 F. Supp. 2d 819, 834 (N.D. Ill. 2001).

"Necessity" can be supported by evidence of functional gains experienced by persons with disabilities through residence in the community. *Lapid-Laurel, L.L.C.,* 284 F.3d at 461. "Necessity" can also be demonstrated through evidence that placement in small neighborhood-based homes serves a therapeutic purpose. *Bryant Woods Inn., Inc. v. Howard County,* 124 F.3d 597, 604 (4th Cir. 1997).

Thus, it being reasonable and necessary to treat this unrelated group of disabled individuals the same as a family to provide access to housing at 155 Grand Avenue, a reasonable accommodation should be granted as requested.

Lastly, I would like to note that a rooming house is not an allowed use in an R-1B.  This is not a rooming house.   A rooming house rents rooms, not dwelling units with kitchens and eating facilities.  Rooming houses have locked bedrooms and no social support structure.  This home has a support structure in place for individuals in recovery, they practice abstinence and peer supported recovery.  As such, we deny that a rooming house is the actual or intended use of the property.

# EXHIBIT E

# CITY OF MANCHESTER
## PLANNING AND COMMUNITY DEVELOPMENT

Leon L. LaFreniere, AICP
Director

Planning & Land Use Management
Building Regulations
Code Enforcement Division
Community Improvement Program
Zoning Board of Adjustment

Pamela H. Goucher, AICP
Deputy Director Planning & Zoning

Michael J. Landry, PE, Esq.
Deputy Director Building Regulations

## REASONABLE ACCOMMODATION NOTICE OF DECISION

Case No.: ZBA2022-002                    Property Location: 155 Grand Avenue

You are hereby notified that the request of:   Quasar, LLC (Owner)
                                               342 Cool Spring Blvd.
                                               Franklin, TN  37067

                                               Andrew Tine, Esq. (Agent)
                                               18 Maple Avenue, Suite 267
                                               Barrington, RI  02806

"1) to deem the existing occupancy as a family, requiring no further relief; 2) a reasonable accommodation to treat the occupants as a family requiring no further relief; and 3) a reasonable accommodation to occupy the house as congregate housing, making an exception to the zoning" has been **DENIED**.

Reason for Denial:   1) The existing occupants do not meet the definition of a family as defined in the zoning ordinance.

2) Providing occupants classification as a family would create a fundamental alteration of the zoning scheme and is therefore not reasonable.

3) Providing occupants an accommodation to occupy the house as congregate housing would create a fundamental alteration of the zoning scheme and is therefore not reasonable.

Date: 3/15/2022

Robert G. Breault
Chairman, Zoning Board of Adjustment

**NOTE:** *Per RSA 677:2, any aggrieved person affected by the Board's decision may request a rehearing within 30 days.*

One City Hall Plaza, Manchester, New Hampshire 03101
Phone: (603) 624-6450 or (603) 624-6475   Fax: (603) 624-6529
E-Mail: pcd@manchesternh.gov   www.manchesternh.gov

# CITY OF MANCHESTER
## PLANNING AND COMMUNITY DEVELOPMENT

Leon L. LaFreniere, AICP
Director

Planning & Land Use Management
Building Regulations
Code Enforcement Division
Community Improvement Program
Zoning Board of Adjustment

Pamela H. Goucher, AICP
Deputy Director Planning & Zoning

Michael J. Landry, PE, Esq.
Deputy Director Building Regulations

## VARIANCE NOTICE OF DECISION

Case No.: ZBA2022-002

Property Location: 155 Grand Avenue

You are hereby notified that the request of:  Quasar, LLC (Owner)
342 Cool Spring Blvd.
Franklin, TN 37067

Andrew Tine, Esq. (Agent)
18 Maple Avenue, Suite 267
Barrington, RI 02806

for variance relief required to convert the use of a single family home to a congregate housing use on a lot of 9,000 SF where 15,000 is required, with 90' of lot frontage where 150' is required and a 9' side yard setback where 20' is required in the R-1B zoning district from the terms of Section(s) **5.10(A)10** Congregate Housing, **6.01** Minimum Lot Area, **6.02** Minimum Lot Frontage and **6.03(C)** Side Yard Setback Required of the Zoning Ordinance of the City of Manchester, New Hampshire, has been **DENIED** as per documents submitted through February 17, 2022 in accordance with Article V of the Board's BY-LAWS on March 10, 2022.

Stipulations or Comments:_____

*If denied, the decision is based on a finding that one or more the following five criteria was **not** satisfied:*

☑ *1. The variance will not be contrary to the public interest.*

☑ *2. The spirit of the ordinance is observed.*

☑ *3. Substantial justice is done. .*

☑ *4. The values of surrounding properties are not diminished.*

☑ *5. Literal enforcement of the provisions of the ordinance would result in an unnecessary hardship.*

Explanation: BOARD FOUND THAT USE AS CONGREGATE HOUSING WOULD ALTER THE CHARACTER OF THE NEIGHBORHOOD WHICH DEEMED IT CONTRARY TO PUBLIC INTEREST AND NOT IN THE SPIRIT OF THE ORDINANCE. TESTIMONY WAS PRESENTED THAT USE WOULD DIMINISH PROPERTY VALUES. HARDSHIP NOT SUPPORTED BECAUSE PROPERTY CAN BE USED AS A SINGLE FAMILY HOME

Date: 3/15/2022

Robert G. Breault
Chairman, Zoning Board of Adjustment

NOTE: *Per RSA 677:2, any aggrieved person affected by the Board's decision may request a rehearing within 30 days.*

# EXHIBIT F



# CITY OF MANCHESTER
## PLANNING AND COMMUNITY DEVELOPMENT

Planning and Land Use Management
Building Regulations
Community Improvement Program
Zoning Board of Adjustment

Leon L. LaFreniere, AICP
Director

Pamela H. Goucher, AICP
Deputy Director - Planning & Zoning

Michael J. Landry, PE, Esq.
Deputy Director - Building Regulations

**Date:**       June 22, 2021

**To:**         Honorable Board of Mayor and Aldermen

**From:**       Leon L. LaFreniere, AICP
              Director, Planning & Community Development

**Subject:**    Proposed Zoning Ordinance Amendments

Please find attached a proposal to amend the City of Manchester Zoning Ordinance intended to clarify the definition of *Family* as is currently contained in the ordinance. While the application and interpretation of this amended definition would remain consistent with existing language, the addition of new language will serve to further clarify the conditions upon which occupancy of a dwelling unit by unrelated persons is considered a family for purposes of classifying use group category. This proposed language was developed in collaboration with the City Solicitor's Office.

A second amendment is also intended to clarify the existing ordinance; in this case as it pertains to parking requirements for Congregate Housing. The current ordinance provisions require the provision of one parking space for each dwelling unit for independent living and congregate units. This provision has been consistently interpreted to require one parking space for each bedroom in a congregate housing facility. The proposed ordinance amendment would serve to clarify this point by separating congregate housing in the Table of Off-Street Parking Requirements in the same way as it is defined in the Table of Uses. With this amendment the application of the ordinance would remain the same with one parking space required for each bedroom in a congregate housing facility.

Please do not hesitate to contact me with any question you may have regarding this proposal.

One City Hall Plaza, Manchester, New Hampshire 03101
Phone: (603) 624-6450  Fax: (603) 624-6529
E-Mail:  pcd@manchesternh.gov
www.manchesternh.gov

Manchester 1118       5.1



*City of Manchester*
*New Hampshire*

*In the year Two Thousand and Twenty One*

## AN ORDINANCE

"An Ordinance amending the Zoning Ordinance Chapter 155 of the City of Manchester Code of Ordinances to revise the definition of "family". "

**BE IT ORDAINED, By the Board of Mayor and Aldermen of the City of Manchester as follows:**

I.   Amending the Zoning Ordinance, Chapter 155 of the City of Manchester Code of Ordinances as follows:

Note:  New text shown ***bold and italicized.***  Text to be deleted is shown ~~struck through.~~

Revise Section 3.03 as follows.

~~Family: A group of individuals, whether or not related, living together in a dwelling unit in a structured relationship constituting an organized housekeeping unit.~~

***Family: For the purpose of the City of Manchester Zoning Ordinance, the term "family" shall mean:***

A.)   *One or more adult persons occupying a single unit, living and cooking together as a single housekeeping unit, exclusive of domestic servants, who are related by blood, adoption, marriage, or other domestic relationship recognized by the State of New Hampshire.*

B.)   *A number of adult persons not exceeding four (4) living and cooking together as a single housekeeping unit though not related by blood, adoption, marriage or other domestic relationship recognized by the State of New Hampshire, shall constitute a family.*

C.)   *Regardless of the definition set forth herein, foster children shall be allowed in accordance with N.H. State Regulations.*

D.)   *Roomers, boarders, and other transient guests cannot be considered members of a family for this purpose of this definition.*

SECTION II:  Resolve, this ordinance shall take effect upon passage.



*City of Manchester*
*New Hampshire*

*In the year Two Thousand and Twenty One*

## AN ORDINANCE

"An Ordinance amending the Zoning Ordinance Chapter 155 of the City of Manchester Code of Ordinances to revise the parking requirement for congregate housing. "

**BE IT ORDAINED, By the Board of Mayor and Aldermen of the City of Manchester as follows:**

**I.** Amending the Zoning Ordinance, Chapter 155 of the City of Manchester Code of Ordinances as follows:

Note: New text shown **bold and italicized.** Text to be deleted is shown struck through.

Revise Section A of Table 10.04 as follows.

### 10.04 TABLE OF OFF-STREET PARKING REQUIREMENTS

| PRINCIPAL USES | UNIT OF MEASUREMENT | MINIMUM PARKING SPACES REQUIRED PER UNIT OF MEASUREMENT |
|---|---|---|
| **A. RESIDENTIAL** | | |
| Single-Family | Dwelling unit | Two (2) [One & one half (1 ½) in the R-3] |
| Manufactured Housing Unit | Dwelling unit | Two (2) |
| Duplex or two-family | Dwelling unit | Two (2) [One & one half (1 ½) in the R-3] |
| Multi-Family | Dwelling unit | Two (2) [One & one half (1 ½) in the R-3 and RDV) *(Rev. 11/5/03)* |
| Housing for the Elderly, Congregate Housing, Assisted Living, Supported Residential Care | Dwelling unit | One (1) per dwelling unit for independent living and congregate units; one half (0.5) per resident for others |
| Boarding or Rooming House | Guest rooms | One (1) |
| ***Congregate Housing*** | ***Bedroom*** | ***One (1)*** |

SECTION II: Resolve, this ordinance shall take effect upon passage.